CASE 26—PETITION EQUITY—OCTOBER 10.

# Morton & Co. v. Hallam.

# Same v. Same.

### APPEALS FROM CAMPBELL CHANCERY COURT.

ATTORNEY'S LIEN—PURCHASER WITHOUT NOTICE.—Where a creditor of an insolvent railroad corporation employed attorneys to bring suit upon his claim, agreeing to pay them a sum equal to ten per cent. of any amount that should thereafter be realized from the claim, " whether by suit, compromise or otherwise," and the attorneys, having obtained a judgment at law and return of " no property," had an attachment levied on the property of the railroad company, which was sold under decree of court to satisfy all the liens upon it, and purchased by a syndicate, of which the attaching creditor was a member, liens prior to the attachment swallowing up the purchase-money, the attorneys are not entitled, as against a purchaser without notice, to a lien upon stock issued to their client by a new corporation formed by the purchasers, whatever might be the rights of the attorneys if the client had not sold the stock.

LYTTLETON COOKE, A. BARNETT, GEORGE WASHINGTON, JAMES C. WRIGHT FOR LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

1. There is no proof in the case whatever, either showing or tending to show any realization by appellants from legal services by appellee. Proof that appellants wrongfully prevented appellee from securing for them a realization on their claims would be competent if the actions were based upon a *quantum meruit*, but is valueless in a suit on the contract.

2. The Louisville and Nashville Railroad Company is a *bona fide* purchaser, without any notice of the attorney's lien. Prosecution of the suit by the attorney is not constructive notice to a *stranger* that he has a lien for his fee. (Stephens & Hermes v. Farrar, 4 Bush, 13; Isom v. Bell & Wilson, 7 Ky. Law Rep., 589; Fillmore v. Wells, 10 Col., 228, 3 Am. St. Rep., 567; Humphrey v. Browning, 46 Ill., 476, 95 Am. Dec., 446; Andrews v. Morse, 12 Conn., 444, 31 Am. Dec., 572; Rumerill v. Huntington, 5 Day, 163; Robertson, &c., v. Shutt, 9 Bush, 662; Gager v. Watson, 11 Conn., 168; Martin v. Hawks, 15 John., 405; Welsh v. Hole, Douglass, 238; Reed v. Dup-

Morton & Co. v. Hallam.        Same v. Same.

per, 6 T. R., 361; Pinder v. Morris, 3 Cal., 165; Andrews v. Morse, 12 Conn., 444; Willis, &c., v. Vallette, 4 Met., 186.)

3. In order to make a case against the Louisville and Nashville Railroad Company, which was necessary to sustain the jurisdiction of the chancellor, the plaintiff should have alleged in his pleading that the Louisville and Nashville Railroad Company is not a *bona fide* purchaser without notice. (Bassett v. Nosworthy, Leading Cases in Equity, vol. 2, part 1, 4th Am. ed.; Sullivan's Heirs v. Bates, &c., 1 Litt., 41; Mason, &c., v. Peck, 7 J. J. Mar., 300.)

4. The suits were not brought in the proper county. No suit of this character can be brought against appellant in any county in this State except in Jefferson county, where appellant has its office and place of business, and where its vice-president, its chief officer in this State, resides. (Civil Code, secs. 51, 72, 73, 78, 80, 732.)

5. The suits brought by appellee against Morton and Morton & Company, in the Jefferson Court of Common Pleas, seeking a personal judgment for the money claimed in this suit, was a waiver of the lien he now asserts.

O'HARA & BRYAN, R. W. NELSON, HALLAM & MYERS, E. F. TRABUE for appellee.

1. The statute giving the attorney a lien is not only notice to the judgment debtor, but to any person who deals with or concerning the judgment, that the attorney has a lien. It is a matter of record that all persons who touch it in any manner must observe; and the lien follows the judgment in every transition until it is satisfied. It can not matter how many changes have been made, as long as the judgment can be traced the lien exists and may be enforced. (Gen. Stats., chap. 5, art. 1, sec. 15; Stephens, &c., v. Farrar Brothers, 4 Bush, 13; Wood v. Anders, 5 Bush, 601; Reid & Stone v. Punch, 2 Ky. Law Rep., 62; Robertson & Cleary v. Shutt, 9 Bush, 661.)

2. The institution of the ordinary actions in the Jefferson Court of Common Pleas was not a waiver of appellee's lien.

3. The venue is transitory, and reaches the railroad company in any county where it is served with summons.

4. Morton & Co. and Morton have each appeared and answered the amended and supplemental petition without any service of summons, and have thereby confessed the jurisdiction of the court.

5. As the Louisville and Nashville Railroad Company has appeared and answerered to the merits, it is now too late to raise any question as to the summons issued and served on that company in Campbell county, even if such service be irregular. (Thomas & Pattie v. Warford, 1 Bibb, 261; Reading v. Ford's Heirs, 1 Bibb, 338; Starling & Davis v. Hardin, 2 Bibb, 520; Frankfort Bank v. Anderson, 3 Mar., 2; Duff v. Combs, 8 B. M., 386.)

6. Appellee's services contributed to the realization in stock of the full claims of John P. Morton & Co. and John P. Morton, and under the ruling of this court in Simrall v. Morton (MS. Op., Jan. Term, 1885), he is "entitled to recover under the contract," and has his attorney's lien for ten per centum of the value of the stock realized.

7. Exceptions to orders sustaining demurrers to answers came too late, (Carroll's Code, sec. 334; Beavan v. Phillips, 83 Ky., 88.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted by John P. Morton & Co. and the Louisville and Nashville Railroad Company from a judgment of the Campbell Chancery Court in favor of the appellee, J. R. Hallam.

The actions were instituted to enforce a lien asserted by the appellee as an attorney at law for his fees under a contract with John P. Morton & Co., who were his clients, in a litigation with the Louisville, Cincinnati and Lexington Railroad Company. The lien, as is alleged, existed on the stock of the Cincinnati and Lexington Railway Company that was created by the purchase, through a syndicate, of the Louisville, Cincinnati and Lexington Railroad Company, John P. Morton & Co. being one of the purchasers, and accepting for the debts against the old company stock in the new company, the Cincinnati and Lexington Railway Company. The old company, the Louisville, Cincinnati and Lexington Railroad Company, was largely indebted to the firm of John P. Morton & Co., and becoming insolvent, the appellee, J. R. Hallam, was employed, in conjunction with R. W. Woolley and Bodley & Simrall, by the firm of John P. Morton & Co., to secure in some way, by suit, these large sums of money due the firm. They entered into a written contract, by which they were to bring one or more suits, as, in their judgment, might be

proper, against the railroad company and others, and for their services the firm "agreed to pay each of the three firms of attorneys a sum of money equal to the value of ten per cent. of any amount that shall hereafter be realized from or secured to us of said claims, whether by suit, compromise or otherwise." This contract was entered into in December, 1874.

Certain actions were instituted under this contract in the courts of Jefferson county against the Louisville, Cincinnati and Lexington Railroad Company, and judgments recovered for large sums of money, amounting, in the aggregate, to about one hundred and thirty thousand dollars, including the interest. The indebtedness was evidenced by written obligations, and no controversy existed as to the right to a judgment except as to usury alleged to have been embraced in the transactions. In September, 1874, this corporation, or its property, had been placed in the hands of a receiver at the suit of one Douglas, then pending in the Louisville Chancery Court, for the benefit of the holders of certain mortgage bonds. The contract with the appellee was made in December following, and in the condition the railroad company was then, millions of dollars had to be paid by reason of liens before the unpreferred creditors could share in the proceeds of the railroad property. Upon a return of *no property*, John P. Morton & Co., through their counsel, had an attachment levied on the railroad property, including all the rights, franchises, &c., pertaining to it; and their suits being consolidated with that of Douglas and other actions, the road, together with its property, franchises, &c., was sold and purchased by a syndicate, of which

the firm of John P. Morton & Co. was a member.   The
attachment lien was inferior to other liens existing
by mortgage, &c., for several millions of dollars, at the
time the syndicate was formed and the purchase made,
and it is evident that the stock accepted by the appel-
lants, John P. Morton & Co., in the new enterprise, the
Cincinnati and Lexington ,Railway Company, in lien
of its debts, was, at that time, of but little, if any,
value.

That firm, instead of making their debts, had in-
curred a much greater liability by becoming bound, as
purchasers of the old road, with several millions of
dollars of liens, prior in law and equity to their pur-
chase, and which had to be satisfied.   They acquired
no lien or preferred claim, by reason of the attach-
ment levied on this railroad property, that placed
them in any better condition than any unsecured
creditor; but, on the contrary, were risking a loss
of more money by entering into the syndicate and
forming a new corporation, that in running the road
might meet with the fate of the old corporation.   The
stock in the new corporation, the Cincinnati and Lex-
ington Railway Company, was issued under the agree-
ment between those who purchased the road, John P.
Morton & Co. being among the number ; and the appel-
lee, Hallam, as the attorney for that firm, had no
interest in the stock, and was, in no manner, connected
with the purchase.   He had sued the appellant, on the
contract of employment, in the Jefferson Court of Com-
mon Pleas in March, 1879, and appellant had procured
this stock, and entered into the syndicate in the year
1877. under which the purchase was made.   No lien

was asserted by the appellee, or claim set up to this stock, until these actions were instituted in the Campbell Chancery Court in July, 1881.

The appellants resided in the city of Louisville, and so did the chief officers of the corporations made defendants to this action, and the right of the appellee to maintain his action is based upon the fact that the garnishee, or rather the Louisville and Nashville Railroad Company, had been served in the county of Campbell, and that this corporation had purchased of John P. Morton & Co. the stock of the Cincinnati and Lexington Railway Company that had been assigned or issued to him by the syndicate creating this last company, and that having a lien, by reason of his services as attorney, on the property rights and franchises of the Louisville, Cincinnati and Lexington Railroad Company, the Louisville and Nashville Railroad Company must be presumed to have had notice of his lien when it purchased the stock of John P. Morton & Co.; that the Louisville and Nashville Railroad Company had acquired stock in the new company on which he held a lien as an attorney, by reason of the judgment obtained against the old company. It is insisted by the appellees that the service of process on the station agent of the corporations was not a legal service, and by John P. Morton & Co., that the appellant had no right to prosecute this action against him to enforce the lien, until he first established a valid claim upon which to base his lien; and to do this, he was compelled to bring his suit where the defendant lived, in the absence of an actual service in the county where the action was instituted. His action in the Jefferson

Court of Common Pleas on the original contract is still pending; and, by the judgment of the Campbell Chancery Court, the Louisville and Nashville Railroad Company is made to pay for having purchased subject to a lien that may be shown, when the action is tried in Jefferson county, never to have existed. It is said, however, that John P. Morton & Co. entered their appearance in Campbell county, and made no objection, or failed to take an exception to the action of the chancellor in sustaining demurrers to their several defenses. The record is somewhat confused, and it is difficult to determine whether an objection was made or an exception reserved; and, in view of the facts before us, it is only necessary to determine whether any lien existed in favor of the appellee on this stock sold the Louisville and Nashville Railroad Company by John P. Morton & Co. No personal judgment was rendered against John P. Morton or the company; but a judgment rendered against the Louisville and Nashville Railroad Company, requiring the latter to pay the appellee about twenty thousand dollars, with interest from July, 1881, his part of the proceeds of the speculation made by Morton & Co. on the purchase of the road, upon the idea that, under the terms of the contract, the debt of John P. Morton & Co. was secured, by reason of the services of his attorneys. This court, as the case is now prepared, will not undertake to pass on the merits of the controversy; and, as said in a former case (Simrall v. Morton, Manuscript Opinion, January Term, 1885), involving a like question upon the same contract, if John P. Morton embarked in this enterprise and abandoned these suits, without the

consent of his attorneys, in that event the attorney would be entitled to a reasonable compensation for the services rendered.

What character of lien, assuming that a valid claim existed on the part of the appellee against Morton & Co., did the appellee have on the property and stocks. sold the appellant, the Louisville and Nashville Railroad Company? We have looked to the facts of this record, and are unable to find any rule of law or equity, or statutory regulation, with regard to the fees of counsel, that would create such a lien.

The action of Douglas, in the interest of bond-holders, as well as the actions of the appellants, Morton & Co., against the old or first-named corporation, had gone to judgment. From that judgment the appellee, as attorney, claims the lien originates. That judgment was to sell all the property rights and franchises of the corporation. The sale was made, and the road purchased by the syndicate for eight hundred thousand dollars, and bonds executed for the purchase money. The purchasers took the property, subject to the liens of bond-holders, that amounted to several millions of dollars. All the creditors, including bond-holders, as well as John P. Morton & Co., looked to this judgment to satisfy their claims. The attachment by appellant was gone, in so far as it created any lien, because the property was sold to satisfy it. The bond-holders had priority, for the reason the sale was subject to their lien. John P. Morton & Co., as well as the other creditors, could look to nothing else but this judgment of sale, or the bonds executed in pursuance of the judgment, to satisfy their demands, and when it clearly ap-

pears that the prior liens swallowed up all the purchase money, and there was nothing left to pay the claim of appellee's client, what lien had the appellee, as attorney, by reason of the judgment, that could be enforced? If the stock John P. Morton & Co. obtained in the new corporation had, at the time it was issued, been worth what it called for in money, what lien would the attorney have as against a *bona fide* purchaser? The purchaser would look to the judgment, and that was satisfied; or if not, he would see that John P. Morton & Co. could derive no benefit from it, because of the preferred claims, and he certainly would not be required to investigate the result of the speculation entered into by the syndicate. Suppose that appellee's client had been no party to the purchase, the attorney would have no lien as to third persons, because he must look alone to the judgment he had recovered; and that judgment being satisfied by the payment of other claims, he would be remediless as against a purchaser of the road or the stock. If it can be said that the attorney had any interest in this stock, there was no notice, actual or constructive, to the Louisville and Nashville Railroad Company, of the existence of any lien, and when the purchase money was paid and the bond-holders satisfied, the Louisville and Nashville Railroad Company took, under the purchase, free of any lien the appellee may have had. How a lien can exist as to third parties, by reason of a judgment that is satisfied in full by the payment to creditors entitled to the fund as against the claim of the one asserting the lien, it is difficult to comprehend.

If John P. Morton & Co. got nothing by the judg-

ment, the attorney could occupy no better position than his client.

The fact that appellee's clients made by the purchase would affect them if the appellee, by his contract, was entitled to any part of what was made by the venture; but when the rights of *bona fide* purchasers are concerned, it presents a different question.

There being no lien to assert against the appellant, the Louisville and Nashville Railroad Company, the judgment below was erroneous, and is reversed, with directions to dismiss the petitions, as to both the appellants in both appeals, without prejudice.